UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BRENDA M. CHRISTY, | ) | Civil Action No.: 4:09-cv-1428-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| THE CITY OF MYRTLE BEACH and | ) | |
| THE MYRTLE BEACH POLICE DEP'T, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

In this employment action, Plaintiff alleges gender discrimination and retaliation in violation

of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. and age

discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA),

29 U.S.C. § 621 et seq.  The undersigned entered a Report and Recommendation (Document # 60)

recommending that Defendant's[1] Motion for Summary Judgment (Document # 40) be granted and

the case be dismissed in its entirety.  Plaintiff filed Objections (Document # 61) to the Report and

Recommendation.  The district judge entered an Order (Document # 66) adopting the Report and

Recommendation as to Plaintiff's claims of gender discrimination and age discrimination.  With

regard to Plaintiff's claims of retaliation, the district judge recommitted the matter to the undersigned

to consider Plaintiff's claims of retaliation in light of Plaintiff's alleged reports of discrimination that

---

[1]Although Plaintiff has listed the City of Myrtle Beach and the Myrtle Beach Police
Department as Defendants in this action, the City and its Departments are not separate entities
and Plaintiff's employer at all relevant times has been the City of Myrtle Beach.  Thus, the
undersigned refers to one Defendant rather than Defendants.

were not addressed in the Report and Recommendation.[2]   Thereafter, the undersigned held a

telephone conference and requested that the parties file supplemental briefs.   The parties

subsequently filed supplemental briefs.

## II.   PLAINTIFF'S INITIAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OBJECTIONS TO FIRST REPORT AND RECOMMENDATION

In her Objections, Plaintiff argues that the undersigned failed to consider in connection with

her retaliation claim three complaints of discrimination she made to her supervisors during March

and May of 2007.  Plaintiff provides limited discussion of these complaints in her initial Response

to Defendant's Motion for Summary Judgment.  The initial Response includes the following factual

assertions regarding these complaints:

> Ms. Christy met with City Manager Thomas Leath on March 5, 2007, and objected to the unfair promotion of less qualified men. Leath took no action to address her concern. He did assist her in obtaining a meeting with Chief Gall. In the meeting with Chief Gall, Ms. Christy opposed the unfair promotional decisions, and the fact that the decisions of male supervisors were not subjected to the same scrutiny and investigations such as she endured in February 2007. Gall called Ms. Christy a "thorn in my side." Deborah McCorkle recalls hearing Chief Gall call Ms. Christy a "thorn in my side." [McCorkle Dep. p. 119, ll.7-17] Chief Gall refused to address her concerns about discrimination and retaliation. [Christy Affid. ¶¶35, 37]

> * * *

> During Biker Week, Investigator Christy was assigned to be supervised by a lowerranking male, Corporal Michael Marsh. She was the only person assigned to

---

[2]The undersigned incorporates herein the retaliation discussion set forth on pages 32-36 of the Report and Recommendation regarding Plaintiff's claims of retaliation based upon her 2002 report of sexual harassment and her June 2007 Charge of Discrimination.  It does not appear that Plaintiff objected to this portion of the Report and Recommendation other than her argument that it omits a discussion regarding her complaints of discrimination in March and May of 2007.  However, the district judge has not yet entered a ruling on Defendant's Motion for Summary Judgment as to any of Plaintiff's retaliation claims, and, thus, the discussion on pages 32-36 is necessary for a complete adjudication of the Motion.

be supervised by a lower-ranking officer. The assignment was posted on the duty roster for all her colleagues to see [P-109 through P-111; Christy Affid. ¶38] On May 28, 2007, within days of raising her objection and complaining of the humiliation she had suffered in front of her colleagues, she was demoted two ranks, from Investigator to PFC. [Christy Affid. ¶40]

Plaintiff's Response (Document # 45) pp. 8, 9.[3]

Plaintiff's discussion of retaliation based upon the March and May 2007 complaints is also limited. In the beginning of her Response, under the Nature of the Case section, Plaintiff states that "she has been retaliated against for opposing unlawful age and gender discrimination from 2002 until the present day." Plaintiff's Response p. 1. Later in her Response, she argues that "Brenda Christy has shown that the reasons given to deny her promotions and to demote her were 'unworthy of credence.'" Response p. 10. In her conclusion, Plaintiff asserts that "[g]enuine issues of material facts remain in controversy as to whether or not Defendant's asserted reasons for the adverse actions taken against Plaintiff were 'legitimate, non-discriminatory reasons' for the actions taken, or, rather, were mere disguises for the real reason for the actions: age and sex discrimination and retaliation for protected activity." Response p. 15.

In her Objections, Plaintiff discusses her claims that Defendant retaliated against her for alleged March and May 2007 complaints in greater detail. Plaintiff asserts the following regarding these complaints:

• Plaintiff was the subject of an internal investigation in February 2007 based upon complaints by her male subordinates. Ultimately, the investigation concluded that the officers were 70% at fault and Plaintiff was 30% at fault. (Report and Recommendation p. 13) Plaintiff objected that male supervisors were not subjected to the same level of scrutiny under similar circumstances, and she sought a meeting with Chief Gall to discuss her concerns about the

_____

[3]As discussed in more detail below, Plaintiff's factual assertions are not necessarily supported by citation to the record.

investigation as well as Gall's failure to promote Plaintiff. He refused to meet with her. Plaintiff, therefore, obtained a meeting with City Manager Leath in March 2007 to discuss her concerns. Leath recalls that she raised issues of unfairness, discrimination and retaliation. [Leath Dep. pp.36-39] However, he never followed through or contacted Plaintiff again regarding her complaints of being treated unfairly. [Leath Dep. pp.40-44, 54,55]

• Plaintiff met with Chief Gall in March 2007 to address her concerns about discrimination and retaliation. Gall called Plaintiff "a thorn in my side." [Gall Dep. p.64]

• During a Myrtle Beach motorcycle weekend in May 2007, Plaintiff was assigned by Deborah McCorkle to report to a lower-ranking male officer, an assignment that was listed on the roster, and noticed by her colleagues during radio communications. She was the only officer assigned to report to a lower-ranking officer. Plaintiff complained to McCorkle that she was embarrassed and humiliated by the assignment. [P-109 through P-111; Christy Affid. ¶¶38, 40]

Objections pp. 16-17.[4]

## III.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

---

[4]Plaintiff makes these same assertions on pages 1-2 of her Supplemental Brief (Document # 71).

reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Retaliation Generally

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); see also 29 U.S.C. 623(d) (ADEA).  To establish a prima facie case of retaliation under Title VII or the

ADEA, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff must present evidence sufficient to create a genuine issue of material fact that Defendant's legitimate, non-retaliatory reason is pretextual. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

It is undisputed that Plaintiff suffered an adverse employment action when she was officially demoted from  Investigator to Patrol Officer First Class on May 28, 2007.  The first and third elements of a prima facie case, that is, whether Plaintiff engaged in protected activity and, if she did, whether a causal connection exists between the protected activity and the adverse employment action, are in dispute.

To establish "protected activity," Plaintiff must show she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Ross, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual harassment was in fact meritorious in order to prevail).  "[T]the 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair."  McNair v. Computer Data Sys., Inc., 172 F.3d

863, 1999 WL 30959, at *5 (4th Cir. Jan.26, 1999) (unpublished).

Plaintiff asserts in her Supplemental Brief that she engaged in "several instances of protected activity in the months just prior to her May 28, 2007, demotion." Supplemental Brief p. 1. Specifically, Plaintiff claims that she engaged in protected activity on three occasions in March and May of 2007: (1) when she met with Chief Gall on March 5, 2007, (2) when she met with City Manager Leath on March 5, 2007, and (3) when she met with Lt. McCorkle on May 21, 2007. Although the parties attempt to lump these instances of alleged protected activity together, because of the requirement that Plaintiff show a causal connection between the protected activity and the adverse employment action, it is necessary to address the March 5, 2007, meetings with Chief Gall and Leath and the May 21, 2007, meeting with Lt. McCorkle separately.

**B.     March 5, 2007, Meetings with Chief Gall and City Manager Leath**

**1.     Protected Activity**

Plaintiff asserts in her briefs that she complained of discrimination and retaliation to City Manager Leath and Chief Gall. However, she provides little detail as to the actual content of her conversations with these individuals when she met with them and even less citation to the record to support her assertions.

First, Plaintiff asserts in her briefs that, in relation to the internal investigation against her in February of 2007, she had concerns that male supervisors were not subjected to the same level of scrutiny under similar circumstances. Thus, she sought a meeting with Chief Gall to discuss her concerns, but he refused to meet with her. While this indicates that she perceived her treatment to be different than that of other, male supervisors, this statement does not indicate that she voiced her concern to Gall. Rather, it shows that she was refused the opportunity to voice her concern.

With the help of Leath, Plaintiff was subsequently able to obtain a meeting with Chief Gall on March 5, 2007. Plaintiff asserts in her briefs that she met with Chief Gall "in March 2007" to address her concerns about discrimination and retaliation and that Chief Gall called Plaintiff "a thorn in my side." Plaintiff cites to page 64 of Chief Gall's deposition, wherein he admits to calling her a thorn in his side. Gall Dep. p. 64. This comment by Chief Gall may reveal Gall's attitude toward Plaintiff; however, it does not support any contention by Plaintiff that she engaged in protected activity during her meeting with Chief Gall. Plaintiff also cites to paragraph 35 of her own Affidavit submitted in this action. There, Plaintiff avers that, when meeting with Chief Gall she asked him "why male supervisors were not subjected to similar investigations when their subordinates complained about them." Plaintiff Aff. ¶ 35. Defendant argues that Plaintiff's submissions to the South Carolina Human Affairs Commission (SCHAC) are contrary to her Affidavit testimony contained in paragraph 35.

Approximately twenty days after her meeting with Gall, on March 25, 2007, Plaintiff filed an Employment Initial Inquiry Questionnaire[5] (Questionnaire) with the SCHAC. In the Questionnaire, Plaintiff indicated that she was denied a promotion and harassed based upon her sex and that she complained about her treatment to a member of management. Questionnaire, MB1-001745-51 (attached as an Exhibit to Thomas Affidavit). However, she states that she did not "specifically allege that [her] treatment was discrimination based upon" sex. Id. The narratives Plaintiff provides in the Questionnaire indicate that Plaintiff complained generally that Defendant discriminated against her because Chief Gall did not like her and retaliated against her because of

---

[5]Defendant notes that Plaintiff signed the Questionnaire, under the statement "I certify that all of the information contained in this questionnaire is true, accurate and factual to the best of my knowledge, information, and belief."

the 2002 report of sexual harassment, but does not indicate it was because of her gender or age. Plaintiff also describes her meeting with Chief Gall on March 5, 2007, in the Questionnaire. She states that she "asked him why I have not been promoted" and "questioned the Chief as to why he had me investigated." Id. She does not indicate in the Questionnaire that she complained to Chief Gall about discrimination based upon gender or age.

In response to Defendant's arguments that Plaintiff did not indicate in her Questionnaire that she complained of unlawful discrimination based upon gender or age, Plaintiff asserts that her statements in the Questionnaire should be disregarded because they were completed by her, a layperson, without the benefit of counsel. Plaintiff also points to her testimony during the grievance hearing with Defendant following her demotion, during which she stated,

> And what I found that was disturbing to me and I deem as unfair is there were other officers within the department that were coming to me complaining about <u>male</u> supervisors browbeating them, and they said, why are you being investigated, when this one's doing this and that one's doing that. And I said, well, did they ever get investigated? . . . So <u>as a result of that conversation</u> with two different officers on March 1, 2007, I requested to meet with the chief to express my concerns about being involved in an internal investigation for doing my job as a supervisor . . . ."

Grievance Hearing Transcript pp. 8-9 (attached as an Exhibit to McGrath Affidavit). However, this testimony reveals only that she requested a meeting with Chief Gall (which she did not initially receive) as a result of hearing of other officers speak of male supervisors "browbeating" them. It does not show that she discussed this concern with Chief Gall.

The only evidence in the record that Plaintiff complained to Chief Gall about discrimination is her own Affidavit testimony in which she states that she asked him "why male supervisors were not subjected to similar investigations when their subordinates complained about them." Plaintiff Aff. ¶ 35. Plaintiff's Affidavit testimony is inconsistent with her certified statement on her

Questionnaire that she did not "specifically allege that [her] treatment was discrimination based upon" sex. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Rohrbough v. Wyeth Labs. Inc., 916 F.2d 970, 975 (4th Cir.1990) (quoting Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984)); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (noting that courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"). Nevertheless, assuming, arguendo, Plaintiff has presented sufficient evidence to create an issue of fact as to whether she engaged in protected activity when she complained to Chief Gall on March 5, 2007, for the reasons discussed below, she fails to show a causal connection between the protected activity and the adverse employment action.

Plaintiff also asserts in her briefs that she requested a meeting with City Manager Leath, who agreed to meet with her on March 5, 2007. Plaintiff points to Leath's deposition and states that "Leath recalls that she raised issues of unfairness, discrimination and retaliation. [Leath Dep. pp. 36-39]" Objections p. 16; Plaintiff's Supplemental Brief p. 2. However, a review of the portion of Leath's deposition cited by Plaintiff indicates no recollection by Leath of any complaints of discrimination by Plaintiff based upon age or gender. Leath recalls that Plaintiff "did not always feel appreciated for the job she did. She talked about being passed over or not promoted to Sergeant and felt that was unfair." Leath Dep. p. 36. When asked, "did she mention why she felt she was being passed over?," Leath recalled that Plaintiff raised the report of sexual harassment she made "some

years earlier" and that Plaintiff said "she was being retaliated against because of that." Leath Dep. pp. 36-37. When asked if she gave any other reasons for being passed over for the Sergeant positions, Leath replied "nothing specifically comes to mind." Leath Dep. p. 37. He mentioned that she felt she was more qualified than the officers that were promoted but he could not recall whether she mentioned specific names. Leath Dep. p. 37. There is no discussion in the portion of Leath's deposition cited by Plaintiff that Leath recalls Plaintiff complaining of discrimination based upon gender or age, either with respect to the promotion denials or the February 2007 investigation. Thus, the only evidence cited by Plaintiff to show that she engaged in protected activity during her conversation with Leath indicates that she complained of being treated unfairly in retaliation for her 2002 report of sexual harassment.

Plaintiff describes in the Questionnaire her meeting with Leath, stating that she showed him discrepancies in the way the Chief handles discipline against her as well as not acknowledging accomplishments by her. Id. Plaintiff discussed an example where Chief Gall wrote a commendation letter for Sergeant Amy Prock when she received the American Business Women's Association Award but did not write a commendation letter for Plaintiff when she received the Outstanding Graduate of the Year Award from Webster University. Id. She further indicates in the Questionnaire, "I explained to the City Manager of about [sic] my belief as to why the Chief of Police dislikes me, stemming from a 2002 whistle blower incident." Id.

The evidence cited by Plaintiff to support her arguments that she engaged in protected activity when she met with City Manager Leath shows only that she complained of being treated unfairly in retaliation for her 2002 report of sexual harassment. There is no evidence in the record that Plaintiff complained to Leath that she was being discriminated against because of her gender

or her age.

As stated above, to establish "protected activity" Plaintiff must show she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Ross, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual harassment was in fact meritorious in order to prevail). "The inquiry is therefore (1) whether [plaintiff] 'subjectively (that is, in good faith) believed' that the [defendant] had engaged in [an illegal practice], and (2) whether this belief 'was objectively reasonable in light of the facts,' a standard which we will refer to as one of 'reasonable belief.'" Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003)(citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir.2002)). It appears Plaintiff subjectively believed that she was being retaliated against in 2006 and 2007 for her report of sexual harassment in 2002. However, such belief must be objectively reasonable as well. In light of the facts, including the length of time that passed between the report of sexual harassment and the promotion denials, the intervening events in 2004 that lead to her supervisory duties being revoked[6],

---

[6]As discussed in more detail in the Report and Recommendation, in October of 2004, Plaintiff was involved in a "major verbal altercation" with one of her subordinate officers and, consequently, was removed from supervisory duties and placed in a mentoring program in the hopes of rehabilitating her to resume supervisory duties in the future. Gall Aff. ¶ 45. Plaintiff frequently stated that she was not ready to be placed back in a supervisory position or that she wanted to be promoted to Sergeant but did not want the supervisory duties that came along with such a position. Brown Notes, 1-13-05 through 2-25-05, MB1-000359 - 362; Gall Aff. ¶ 59; Prock Aff. ¶¶ 8 - 10. In November of 2006, Chief Gall and Plaintiff's supervisors decided to assign her to supervise four officers on B- Shift in the Street Crimes Unit. Gall Aff. ¶ 59; Prock Aff. ¶¶ 10, 15; McCorkle Aff. ¶ 12. Their intention was to assist and give Plaintiff the opportunity to demonstrate that she was ready to resume a supervisory role. Gall Aff. ¶ 59. However, the officers whom Plaintiff was assigned to supervise complained to Prock on several occasions about Plaintiff's supervision. Prock Aff. ¶¶ 12-13, 20, 22-27. Plaintiff was subsequently removed as a shift supervisor over these individuals in April of 2007. Gall Aff. ¶ 68.

and that Chief Gall encouraged Plaintiff not to resign when she attempted to do so in 2004, Gall Aff. ¶ 45, Plaintiff's showing of protected activity with respect to her complaint to Leath is quite weak. Nevertheless, for the reasons discussed below, Plaintiff fails to submit evidence of a causal connection between any protected activity on March 5, 2007, and her demotion on May 21, 2007.

### 2. Causal Connection

To meet the causal connection requirement, a plaintiff must show that the adverse action would not have occurred "but for" the protected conduct. Ross v. Communications Satellite Corp., 759 F.2d 355, 365-66 (4th Cir.1985) overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). However, the passage of time tends to negate any inference of a causal connection. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3–month period insufficient to prove causal connection); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir.1992) (4–month period insufficient)); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998)(3–year lapse insufficient). Plaintiff argues her May 28, 2007, demotion is sufficiently close in time to her March 5, 2007, protected activity to establish a causal connection based upon temporal proximity alone. In her Supplemental Brief, Plaintiff cites to cases in which a causal connection was found where the adverse employment action occurred between less than one month up to two years after the protected

activity.  See Plaintiff's Supplemental Brief pp. 7-8.[7]  However, unlike the cases cited by Plaintiff,

here, evidence exists of an intervening event that occurred between her meetings with Leath and Gall

on March 5, 2007, and her demotion on May 28, 2007, that had a direct bearing on the adverse

employment action.  See, e.g., Cheshewalla v. Rand & Son Const. Co., 415 F.3d 847, 852 (8th

Cir.2005) (holding that "intervening events eroded any causal connection suggested by the temporal

proximity of [the employee's] protected conduct and her layoff").   As discussed in more detail

below, the evidence in the record reveals that Plaintiff's complaint on May 21, 2007, regarding her

assignment during bike week precipitated a discussion among her supervisors about what should be

done next with respect to Plaintiff's employment.  This intervening event breaks any connection

between the March 5, 2007, protected activity and the May 28, 2007, demotion based upon temporal

proximity alone.  Plaintiff fails to present any other evidence of a causal connection between those

two events.  Therefore, she fails to present a prima facie case of retaliation with respect to her March

5, 2007, protected activity, and summary judgment is appropriate as to Plaintiff's claims of

retaliation arising out of her March 5, 2007, meetings with Chief Gall and City Manager Leath.[8]

_____

[7]The cases cited by Plaintiff in support of time frames of four months or greater are
distinguishable.  Conner v. Schnuck Markets, Inc, 121 F.3d 1390, 1395 (10th Cir. 1997) (time
frame of four months not sufficient to alone show a causal connection); Hochstadt v. Worcester
Found. for Exp. Biology, Inc., 425 F.Supp.318, 324-25 (D.Mass. 1977) (consideration under
standard for preliminary injunction, not summary judgment); Templeton v. First Tenn. Bank
N.A., 424 Fed.Appx. 249 (4th Cir. 2011) (adverse action taken at first available opportunity
following protected activity; Plaintiff resigned shortly after protected activity but reapplied for
hire approximately two years later); Bowers v. Bethany Med. Ctr., 959 F.Supp. 1385 (D.
Kan.1997) (adverse action taken at first available opportunity following protected activity;
Plaintiff was on disability leave for approximately seventeen months following protected activity
and adverse action was taken within three weeks after her return).

[8]As discussed on pages 19-21 below, Defendant presents legitimate, non-retaliatory
reasons for Plaintiff's demotion.  Furthermore, Plaintiff fails to present evidence that these
reasons are pretext for retaliation based upon her complaints on March 5, 2007.  That is, Plaintiff

C.     **May 21, 2007, Meeting with Lt. McCorkle**

1.     **Protected Activity**

Plaintiff also asserts that she engaged in protected activity when she complained about being given directions by a lower-ranking officer during Bike Week in May of 2007.  Plaintiff asserts in her Objections and her Supplemental Brief that she was a senior female investigator and she was assigned to receive orders from a male Corporal.  She "complained to Lt. McCorkle on May 21, 2007, that she was embarrassed and humiliated by the assignment.  [P-109 through P-111[9]; Christy Affid. ¶¶ 38, 40]"  Objections p. 17; Supplemental Brief p. 2.  In paragraph 38[10] of her Affidavit, Plaintiff states,

> After my supervisory duties were taken away, I was assigned to report to a lower-ranking male officer, Corporal Michael Marsh, during Bike Week in May 2007.  This assignment was posted on the duty roster for everyone to see [P-109 through P-111], and at one point during the weekend Corporal Marsh gave me orders over the radio that brought more attention to the assignment and caused several colleagues to question me about it.  I was the only person assigned to report to a lower ranking offier.  [P-109 through P-111; Gall Dep. p. 96;]  I was humiliated, but I completed the weekend assignment before going to Lt. McCorkle to express my concern.  Gall and McCorkle, as usual, were unsympathetic to the situation that had created for me and said I "made a much bigger deal of the matter than warranted, and there were concerns she has stretched the truth about the circumstances."  [Gall Affid. ¶ 70]  I have no idea what Gall means about "stretching the truth," because I only told them what occurred; it was a very embarrassing situation for me to endure.  I was a senior female Investigator on the police force and my colleagues saw that I

---

fails to create an issue of fact that, but for her complaints to Chief Gall and City Manager Leath on March 5, 2007, she would not have been demoted.  Thus, for these additional reasons, summary judgment is appropriate on Plaintiff's claims of retaliation arising out of the March 5, 2007, meetings.

[9]These documents reveal only the assignments for Bike Week.  They do not address the content of Plaintiff's complaint to Lt. McCorkle.

[10]Although Plaintiff also cites to paragraph 40 of her Affidavit, she does not discuss in that paragraph the Bike Week incident or her meeting with Lt. McCorkle.

was assigned to be supervised by a lower-ranking male Corporal.

Plaintiff Aff. ¶ 38.  In this paragraph, Plaintiff does not address the content of her discussion with Lt. McCorkle.  She states only that she went to Lt. McCorkle to "express her concern."  Although Plaintiff states that she was assigned to report to a lower ranking, male officer and that she later expressed her concerns about the assignment to Lt. McCorkle, the court must draw an inference that "her concern" included not only that she was reporting to a lower ranking officer, but also that it was a male officer and that the decision to have her report to a lower ranking, male officer was based upon discrimination.

It is only in her Affidavit prepared for the present litigation that Plaintiff uses the modifiers "male" and "female" to describe the Bike Week circumstances.  In her Charge of Discrimination, Plaintiff asserts "I was put in a situation when a lower ranking officer was supervising me, a couple of days after addressing this issue, I was demoted."  Charge of Discrimination (attached as Exhibit 1 to Thomas Aff.).  This is consistent with her grievance hearing testimony where she testified that "the reason [for the demotion] was the retaliation for my expression over being embarrassed by being supervised by someone of a lower rank," and, later, "It was when I said I was embarrassed about being managed by someone of a lower rank."  Grievance Hearing Transcript, pp. 17, 56 (attached as an Exhibit to McGrath Aff.).

Additionally, during the grievance hearing, Plaintiff testified as follows,

It was when I said I was embarrassed about being managed by someone of a lower rank.  I do want to say, I don't believe that that was a planned, thought out decision that, hey, let's stick this to Brenda.  I knew I was working an area and as a police officer, we have to work areas.  Not a problem with that.  I was embarrassed over being supervisioned.  But I don't think that it was done to me on purpose or in any way trying to embarrass me, but it did embarrass me and it did need to be addressed.

Grievance Hearing Transcript p. 56.  This testimony is inconsistent with Plaintiff's claim that she

was engaging in protected activity on May 21, 2007. Again, the record evidence shows only that she complained about the assignment because she was embarrassed about it, not because she thought it was motivated by some discriminatory animus.

The evidence in the record reveals that Plaintiff complained about being treated unfairly when she met with Lt. McCorkle on May 21, 2007, but Plaintiff has failed to present sufficient evidence to create an issue of fact as to whether she complained about an employment practice that she reasonably believed was unlawful under Title VII or the ADEA. See McNair v. Computer Data Sys., Inc., 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan.26, 1999) (unpublished) ("[T]the 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair."); Godon v. N.C. Crime Control & Pub. Safety, 141 F.3d 1158, 1998 WL 193109 at *3 (4th Cir.1998) (unpublished) (upholding dismissal of retaliation claim because disagreement with disciplinary practices does not constitute opposition to unlawful employment practices); Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995) (in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir.2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient .") (citing Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147 (7th Cir.1997); Miller v. Am. Fam. Mut. Ins., 203 F.3d 997, 1008 (7th Cir.2000) (holding that Plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a general displeasure with being paid less than her co-workers given her longer tenure and

the fact that she had trained some of them" and not discrimination based on a protected class). "An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." Id. at 1008; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (noting that Title VII is not a "general civility code for the American workplace."); Albero v. City of Salisbury, 422 F.Supp.2d 549, 560 n. 43 (D.Md.2006) (Complaints of favoritism are not sufficient, "[making] general workplace complaints is not protected activity."). Therefore, Plaintiff has failed to establish that her complaint to Lt. McCorkle on May 21, 2007, constitutes protected activity. Accordingly, it is recommended that summary judgment be granted as to Plaintiff's claim of retaliation arising out of her May 21, 2007, complaint.

However, for the sake of argument, if Plaintiff did engage in protected activity during her May 21, 2007, meeting with Lt. McCorkle, the undersigned further discusses Plaintiff's retaliation claim below.

### 2.    Causal Connection

In her Objections, Plaintiff argues that the temporal proximity between her complaint on May 21, 2007, and her demotion establish a causal connection between the events. Plaintiff made her complaint regarding her supervision by a lower-ranked officer within a week of her May 28, 2007, demotion. Thus, Plaintiff has presented sufficient evidence to establish a causal connection between her complaints of discrimination and her demotion. See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989)) ("[E]vidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden

of making a prima facie case of causa[tion]'").

### 3. Legitimate, Non-Retaliatory Reason for Demotion

Because Plaintiff has presented sufficient evidence to establish a <u>prima</u> <u>facie</u> case of retaliation with respect to her protected activity on May 21, 2007, the burden shifts to Defendant to present a legitimate, non-retaliatory reason for her demotion. Defendant asserts that, prior to the Bike Weekend, Corporal Marsh, the lower ranking officer who was assigned to supervise Plaintiff, and Sergeant Sloan asked Lt. McCorkle what Plaintiff's status was and how to handle "this" for the weekend. McCorkle Aff. ¶ 21. Lt. McCorkle informed Marsh and Sloan that they were to supervise her since she was working in their area. McCorkle Aff. ¶ 21. When Plaintiff later complained about being supervised by Marsh, McCorkle informed Plaintiff that she would seek a clarification of Plaintiff's status since she was holding rank with no supervisory responsibilities. McCorkle Aff. ¶ 21.

McCorkle met with Captain Vella, Captain Frontz, and Chief Gall and discussed Plaintiff's rank and responsibilities. McCorkle Aff ¶ 22. McCorkle, Vella, and Frontz recommended to Gall that Plaintiff be demoted to a position commensurate with her lack of supervisory responsibilities. McCorkle Aff. ¶ 23. At Chief Gall's request, Lt. McCorkle compiled a notebook of information to support the recommendation. McCorkle Aff. ¶ 23. It had been more than two years since Plaintiff had been removed from supervisory duties and allowed to work in Warrants, without a reduction in rank. Gall Aff. ¶71. <u>See</u> footnote 6, <u>supra</u>. That was supposed to have been a temporary move, just until the City could return her to supervisory duties. <u>Id.</u> Chief Gall warned Plaintiff, through Lt. Heins, that she could (1) go out and supervise the way she was supposed to, (2) ask for a demotion in rank so that she would no longer be a supervisor, or (3) terminate her employment at her own will. MB1-001753 (attached as an Exhibit to Thomas Affidavit). Since the City's efforts to rehabilitate her as a

supervisor had failed, it became necessary to move her to a non-supervisory rank.  Gall Aff. ¶ 71.  All officers ranked Corporal and above in the Myrtle Beach Police Department must be capable of effectively handling supervisory assignments, and Plaintiff could not.  Id.  Chief Gall explained to City Manager Tom Leath that his efforts to overcome Plaintiff's supervisory deficiencies and insecurities had failed, that her supervisory performance was detrimental to officers' morale, and that he had run out of options and patience with her conduct.  Id.  Consequently, Chief Gall recommended that she be demoted to a position not requiring supervisory responsibility: Patrol Officer First Class.  Id.  Leath approved the action.  Id.

Captain Vella and Chief Gall met with Plaintiff on May 28, 2007, and presented her with a Notice of Personnel Action memorandum that states as follows:

> Pursuant to Article I, Section 10 of the Employee Handbook you are hereby notified that effective Monday, 05-28-07 you are being reduced in rank to Patrol Officer First Class (Grade 21-Step 46).

> Your chain of command officers have worked diligently to afford you ample opportunities to develop leadership and supervision skills commensurate with your position/rank as Police Investigator. Your failure to progress to an acceptable level, and your continued resistance and contempt for command officers who are responsible for guiding you and supervising you in an effort to get you into a position to lead officers in this department has left me no option but to remove you from a position with supervisory responsibilities.

> You have demonstrated an extraordinary level of competence in your role in the Street Crimes Unit handling warrants and fugitives; however you have not been able to gain the necessary skills or respect from your subordinates required to lead them as a supervisory officer.

> You will remain assigned to the Street Crimes Unit as the warrants/fugitive officer. Pursuant to Article II, Section 10 of the Employee Handbook, you are entitled to appeal this decision. If you have any questions regarding the procedures, please contact my office.

Gall Aff. ¶ 72; Notice of Personnel Action, MB1-000334.

Defendant asserts that it demoted Plaintiff to Patrol Officer First Class to accurately reflect the level at which Plaintiff had been working for the past two years, that is, in a nonsupervisory position. Plaintiff's supervisors determined that their efforts to return Plaintiff to her role as Investigator with its required supervisory duties had failed and, thus, Chief Gall recommended that Plaintiff be demoted to a position not requiring supervisory responsibilities, and City Manager Leath agreed.

### 4. Pretext

Defendant has presented a legitimate, non-retaliatory reason for Plaintiff's demotion. Therefore, the burden shifts back to Plaintiff to establish that Defendant's reason is pretext for a retaliatory reason. In her supplemental briefs (Documents # 71, 78), Plaintiff argues that both the timing of her demotion, the emails that circulated among her supervisors immediately following her complaint about being supervised by a lower ranked officer, and the creation of a "demotion book" are evidence of pretext. In an email from Captain Vella to Chief Gall (and copied to Lt. McCorkle) dated May 21, 2007, Captain Vella informed Chief Gall that Plaintiff had made a complaint regarding her embarrassment over the weekend. He states,

> She notes that you [Chief Gall] have not stayed within regulations taking away her supervisory duties and leaving her as a [sic] Inv. and having others tell her what to do. I think that it was mentioned also that having her answer directly to the Lt. was not within regulations either which is not following the chain.
>
> I think it is time to make a move on her and demote her in my opinion. If she is going to claim any thing later on, we are only adding to it with just about anything and everything we do now.
>
> It has caused a lot of dysfunction on everyone's part by placing her anywhere as nobody wants to have to deal with her in any capacity, but it would be better for everyone if she did end up demoted and be placed on a shift or as far as I'm concerned she could stay in warrants except for the fact that Lt. McCorkle does not

want to deal with her. If we leave her there, I would place her under Sgt. Arrington in Special Ops unless she is demoted and then it would fall under the chain in SOPs??

MB1-000339 (attached as an Exhibit to Plaintiff Affidavit).

In response to the email, Lt. McCorkle noted that she told Plaintiff that she told Cpl. Marsh and Sgt. Sloan, upon their inquiry, that they were to supervise Plaintiff because she was assigned to their area. Id. Lt. McCorkle further stated that Plaintiff "wants clarification because she said by regulation she still holds rank and was not demoted." Id. Handwritten notes on these emails indicate that, on May 21, 2007, Chief Gall met with Lt. McCorkle, Captain Vella and Captain Frontz and advised Lt. McCorkle to "put together a summary report." Id.

In an email from Captain Vella to Chief Gall and Captain Frontz dated May 22, 2007, Captain Vella stated, "I feel now more than ever that she needs to be demoted or fired." MB1-000337 (attached as an Exhibit to Plaintiff Affidavit). Captain Frontz replied,

I've given Lt. McCorkle some reports I completed some years ago which document the serious concerns I have with Brenda and Lt. Daniels is going to create a report documenting some of the issues/concerns he had when she worked as his Cpl. in Narcotics. From what I saw of what Deborah compiled yesterday as written documentation of the trouble she has caused here, the number of disciplinary actions taken, and the number of opportunities she has been given to improve, I think the final report Deborah turns in may well justify at least a demotion and probably even dismissal. Of course, I will admit that it is hard for me to remain objective when it comes to Brenda but it has become very obvious that no other supervisor at our Department wants Brenda in their section and I know of no one here who trusts her honesty and integrity–those are the most important attributes any law enforcement officer needs!

Id.

These emails reveal that Plaintiff's complaint about being given direction by a lower ranking officer precipitated a discussion among Plaintiff's supervisors about what needed to be done next with Plaintiff. Further, as a result of this discussion, Chief Gall asked Lt. McCorkle to prepare a

"summary report" to support a demotion recommendation. Plaintiff characterizes this report as a "demotion book" and argues that, if Defendant already had sufficient and legitimate reasons to demote Plaintiff, it would not have been necessary to create such a "demotion book" to try and justify its decision. Neither Plaintiff nor Defendant has cited to this "demotion book" in the record, other than a memorandum created by Lt. Daniels on May 22, 2007. See MB1-000347 (attached as an Exhibit to Gall's Deposition). Other than the Daniels memorandum, it appears that Lt. McCorkle did not, as Plaintiff suggests, create new documentation to support a demotion but, rather, compiled and summarized previously created documentation. To be sure, as set forth in the first Report and Recommendation, extensive records existed documenting Plaintiff's performance and the disciplinary actions taken against her over the course of her career. See Report and Recommendation (Document # 60) at pp. 3-6; 8-16.

Nevertheless, the actions taken by Defendant immediately following her complaint beg the question of whether Plaintiff would have been demoted at that time had she not voiced a complaint. Plaintiff cites to Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253 (11th Cir. 2010), in support of her argument that her demotion following her complaint was unlawful. In Alvarez, the district court found that the plaintiff was not performing up to the standards expected of her by her supervisor and that plans were in the works to fire the plaintiff once a replacement could be found. Alvarez, 610 F.3d at 1263. The plaintiff emailed a letter to the defendant's CEO, indicating that she heard that she was going to be fired and she had concluded that it was because she was Cuban. Id. at 1261. After receiving the letter, the CEO and the plaintiff's supervisor decided to fire the plaintiff immediately rather than waiting until they had found a replacement as they had planned to do. Id. at 1262. The district court granted summary judgment on the plaintiff's retaliation claim because

the defendant offered several legitimate reasons, other than her letter of complaint, for firing the plaintiff, including that her performance was unsatisfactory and she was going to be fired anyway. Id. at 1269. The Court of Appeals found that this proffered reason could not support summary judgment because it was undisputed that the plaintiff was fired sooner than she would have been had she not complained. Id. The Eleventh Circuit emphasized that

> Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint. The record does establish that Royal Atlantic had legitimate non-discriminatory reasons to fire Alvarez before she complained, and it remained free to act on those reasons afterward. The one thing Royal Atlantic could not lawfully do is fire her earlier than it otherwise would have <u>because</u> she complained about discrimination at least not unless something in her complaint or the manner in which she made it gave the company an objectively reasonable basis to fear that unless Alvarez was fired she would sabotage its operations or endanger others.

Id. at 1270 (citing <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1191 (11th Cir.1997)).

Here, Defendant has presented legitimate, non-discriminatory reasons for its decision to demote Plaintiff. However, a question of fact exists as to when Defendant would have demoted her had she not engaged in protected activity on May 21, 2007. Plaintiff had remained in her rank as Investigator for more than two years without performing the supervisory duties required of that position. But for her complaint on May 21, 2007, would Plaintiff have remained in her position as Investigator for some period of time? Based on this issue of fact, summary judgment is inappropriate on Plaintiff's claim of retaliation arising out of her May 21, 2007, complaint to Lt. McCorkle, but only if the district judge determines that this complaint amounts to protected activity.

## V. CONCLUSION

In sum, the undersigned concludes that Plaintiff fails to present sufficient evidence to create

an issue of fact regarding her claims of retaliation arising out of her March 5, 2007, meetings with Chief Gall and City Manager Leath. The undersigned further concludes that Plaintiff fails to present sufficient evidence to create an issue of fact as to whether she engaged in protected activity during her May 21, 2007, meeting with Lt. McCorkle. Thus, for these reasons and for the reasons discussed on pages 32-36 of the previous Report and Recommendation (Document # 60), it is recommended that Defendant's Motion for Summary Judgment (Document # 40) be granted as to Plaintiff's claims of retaliation.[11]

                                        s/Thomas E. Rogers, III
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

April 26, 2012
Florence, South Carolina

---

[11]For the sake of completeness, an alternative recommendation is contained within the body of the Report and Recommendation in the event the district judge does not agree with this recommendation.