IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Brenda M. Christy, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 4:09-cv-01428-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| The City of Myrtle Beach and the Myrtle | ) | |
| Beach Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court for a review of the Magistrate Judge's Report and Recommendation [Doc. 91], filed on April 26, 2012, recommending that this court grant Defendants' Motion for Summary Judgment [Doc. 40].

## **FACTUAL AND PROCEDURAL BACKGROUND**

Brenda Christy ("Plaintiff") became employed by Defendant Myrtle Beach Police Department (the "MBPD") in November 1987. In 1990, Plaintiff received a promotion to Patrol Officer First Class. In September 1996, Plaintiff received a promotion to Corporal. In October 1999, Plaintiff received a promotion to Investigator. In April 2006, Plaintiff applied to compete in the 2006 Sergeant Promotions Process. The Promotional Process Policy (the "Policy") [Doc. 45-4] stated that the minimum requirements for promotion to Sergeant were: 1) six years of service with the MBPD as a Certified Officer with two years as an investigator, 2) at least 36 semester hours toward an Associates or Bachelors Degree or sixty-eight continuing education units in qualified classes, schools and seminars, 3) no more than one preventable accident in the year before the

1

announcement date, and 4) no written reprimand or suspension in the year before the announcement date. However, the Policy permitted the Chief of Police to set aside the time-in-grade requirement where he considered such action to be in the best interest of the MBPD. The Policy provided that the promotional process for Sergeant included an oral interview, a written exercise, promotional potential rating, recommendation by chain of command, and a decision by the Chief of Police. Further, the Policy provided that additional consideration would be given for education above the minimum requirement, an average of the annual evaluations received in the three most recent years, and disciplinary actions. As a result of participation in the Promotions Process, Plaintiff was one of five candidates selected as eligible for promotion to Sergeant if a position became available. Plaintiff was ranked second of the five candidates in the eligibility pool. The Policy provided, "the Chief of Police may choose any of the top three candidates for a vacant position." The Policy further provided that a new eligibility pool may be established at any time.

Plaintiff's qualifications for employment included an Associate Degree in Criminal Justice, a Masters Degree in Human Resources Development, selection as the Rotary Club Police Officer of the Year in 1995, and completion of the Administrative Officer's Management Program. Plaintiff received numerous positive reviews of her job performance. Notably, Plaintiff has presented affidavits from three former employees of the MBPD which all give a favorable opinion of Plaintiff's job performance. Further, Plaintiff's August 2006 Performance Appraisal, the last evaluation that Plaintiff received before the second position for Sergeant opened, was generally positive. However, Plaintiff's performance history also contained negative reflections of her job performance.

In February 2002, Plaintiff received an oral reprimand for conducting an unlawful arrest outside of the jurisdiction of the City of Myrtle Beach. In October 2004, Plaintiff was involved in an altercation with a subordinate officer. As a result of the altercation, Plaintiff received a reprimand, was removed from supervisor duties, was temporarily transferred to Warrants duties, and was entered into a mentoring program. In June 2006, Plaintiff received an oral reprimand for failing to handcuff an arrested subject. In July 2006, the first opening for Sergeant became available, and Chief Gall ("Gall") promoted the officer ranked first in the eligibility pool to fill the Sergeant position. In August 2006, Plaintiff received an oral reprimand for leaving a prisoner uncuffed in an open area of the jail. In November 2006, Gall assigned Plaintiff to supervise four officers in the Street Crimes Unit. Subsequently, Gall received information that Plaintiff's subordinate officers were complaining about Plaintiff's job performance. In December 2006, when the second opening for Sergeant became available, Gall promoted the officer ranked third in the eligibility pool to fill the position. In March 2007, another opening for Sergeant became available. At this time, three officers, including Plaintiff, remained in the eligibility pool. The officer originally ranked fifth in the eligibility pool was promoted to fill the position.

When deciding which officers to promote, Gall solicited the opinions of his command staff. At the time the second and third openings for Sergeant were filled, no members of Gall's command staff recommended Plaintiff for promotion to Sergeant. Gall's command staff advised him that Plaintiff lacked character, integrity, and credibility. Furthermore, Gall received information that Plaintiff did not have respect from her co-workers and would create hostility. In May of 2007, Plaintiff's supervisors demoted her to Patrol Officer First Class.

Plaintiff alleges that she was retaliated against in response to her reports of unlawful discrimination within the MBPD. In February 2002, Plaintiff reported the alleged sexual harassment of her co-worker, Deborah McCorkle ("Lt. McCorkle"). Furthermore, Plaintiff alleges having several conversations with her supervisors in 2007 regarding her concerns that she was subjected to discrimination based on her age and gender. Specifically, on March 5, 2007, Plaintiff had a discussion with City Manager Leath ("Leath") regarding unfair treatment. Plaintiff also alleges that she met with Gall on March 5, 2007, to discuss discrimination and retaliation. Finally, Plaintiff alleges that on May 21, 2007, she complained to Lt. McCorkle after being embarrassed by an incident involving an assignment to report to a lower-ranked male officer.

In June 2007, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and sex and gender discrimination. Plaintiff received a dismissal and a notice of right to sue on March 2, 2009. Plaintiff filed the present action on June 1, 2009, bringing claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et. seq.*, and age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*

On July 27, 2011, the Magistrate Judge issued a Report and Recommendation ("First Report") [Doc. 60] recommending that this court grant Defendants' Motion for Summary Judgment [Doc. 40]. The court issued a Text Order [Doc. 65] on September 30, 2011, containing a preliminary ruling accepting the Magistrate Judge's First Report [Doc. 60] with regard to Plaintiff's claims of sex discrimination under Title VII and age discrimination under the ADEA, and with regard to Plaintiff's claims of retaliation under Title VII and the ADEA, recommitting the matter to the

Magistrate Judge with instructions to consider Plaintiff's claims of retaliation in light of Plaintiff's reports of alleged discrimination that were not addressed within the First Report. The Text Order [Doc. 65] provided that the court would issue a formal order on the motion at a later date.

The court issued its formal Order [Doc. 66] on October 11, 2011, granting Defendants' Motion for Summary Judgment in regard to Plaintiff's claims of sex discrimination and age discrimination, but recommitting the matter to the Magistrate Judge to consider Plaintiff's claims of retaliation in light of Plaintiff's reports of alleged discrimination on March 5, 2007, and May 21, 2007, that were not addressed within the Report.

On April 26, 2012, the Magistrate Judge issued his second Report and Recommendation ("Second Report") [Doc. 91] recommending that this court grant Defendants' Motion for Summary Judgment with regard to Plaintiff's claims of retaliation. Plaintiff filed Objections [Doc. 92] to the Magistrate Judge's Second Report, to which Defendants filed a Reply [ Doc. 96]. Now before the court is the Magistrate Judge's Second Report.

## STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight. *Id.* The responsibility to make a final determination remains with this court. *Id.* This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U. S. C. § 636 (b)(1).

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

Plaintiff timely filed objections to the Magistrate Judge's Second Report. The court discerns four objections to the Magistrate Judge's Second Report. Specifically, Plaintiff argues: (1) she engaged in protected activity when she met with Leath and Gall on March 5, 2007; (2) she engaged in protected activity when she complained that she was assigned to report to a lower-ranking officer during Bike Week on May 21, 2007; (3) there was a causal connection between the protected activity on March 5, 2007, and her demotion on May 28, 2007; and (4) Defendant did not present legitimate, non-discriminatory reasons to demote her after she engaged in protected activity on May 21, 2007. Plaintiff's third and fourth objections are moot because, as discussed below, this court does not find Plaintiff engaged in protected activity on March 5, 2007, and May 21, 2007.

To prove retaliation under Title VII or the ADEA, a plaintiff must show 1) she engaged in protected activity, 2) the employer took adverse employment action against her, and 3) a causal connection existed between the protected activity and the adverse action. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985); *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 258 (4th Cir. 1998); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). Plaintiff clearly suffered an adverse employment action when she was officially demoted from Investigator to Patrol Officer First Class on May 28, 2007. The court must determine whether Plaintiff engaged in protected activity and, if she did, whether a causal connection exists between the protected activity and the adverse employment action.

To establish engagement in a protected activity, Plaintiff must show she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir. 1990); *see also Ross*, 759 F.2d at 355 n.1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual

7

harassment was in fact meritorious in order to prevail). "[T]he 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999) (unpublished).

Plaintiff objects to the Magistrate Judge's finding that Plaintiff did not engage in protected activity when she met with Leath and Gall on March 5, 2007. Plaintiff would have the court infer that she expressed her opposition to Defendants' discriminatory practices to Leath and Gall. Plaintiff relies on the fact that she requested a meeting after learning that male supervisors were not subjected to investigation, to infer that she talked about discrimination in that meeting. Plaintiff also relies on her statements during a grievance hearing in which she stated that she requested a meeting with Gall "to express [her] concerns about being involved in an internal investigation for doing [her] job as supervisor." However, during the hearing, Plaintiff never mentions sex or age discrimination as a reason for the requested meeting. *See* [Doc. 42-2 at 8–9]. Plaintiff further relies on Leath's deposition testimony in support of her argument. However, Leath's deposition only reveals that Plaintiff complained to Leath that it was unfair that she was not promoted to Sergeant, not that she complained she was subject to discrimination. *See* [Doc. 92-1 at 36–37].

The court agrees with the Magistrate Judge's finding that the evidence Plaintiff has presented is insufficient to support her argument that she engaged in protected activity during her conversations with Leath and Gall. Thus Plaintiff has failed to establish a prima facie case of retaliation with regard to her conversations with Leath and Gall on March 5, 2007.

Next, Plaintiff objects to the Magistrate Judge's finding that Plaintiff did not engage in protected activity when she complained on May 21, 2007, that she was assigned to report to a lower ranking officer during Bike Week. Specifically, Plaintiff objects that the Magistrate Judge did not infer that the issue that she discussed with her supervisor not only included that she was reporting to a lower ranking officer, but also that it was a male officer and that the decision to have her report to a lower ranking, male officer was based upon discrimination.

Having reviewed the record, the court finds that the Magistrate Judge appropriately considered the facts of the case and decided this was not protected activity as the inference is too tenuous and Plaintiff only uses the modifiers "male" and "female" in her Affidavit prepared for the present litigation. *See Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958) ("[I]t is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."). Plaintiff's Charge of Discrimination filed with the EEOC and her grievance hearing testimony only complain about reporting to a lower ranking officer, not a male officer. As the Magistrate Judge notes, there is insufficient evidence to support Plaintiff's argument that she complained about an employment practice that she reasonably believed

9

was unlawful under Title VII or the ADEA.[1]  Therefore, Plaintiff has failed to establish a prima facie case of retaliation with regard to her complaint on May 21, 2007.

## CONCLUSION

For the foregoing reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Doc. 91], and it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [Doc. 40] is **GRANTED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 13, 2012
Greenville, South Carolina

---

[1] *See McNair*, 172 F.3d 363, 1999 WL 30959, at *5 (unpublished) (finding that the opposition clause does not protect all unlawful employment practices, nor practices the employee simply thinks are somehow unfair); *Godon v. N.C. Crime Control & Pub. Safety*, 141 F.3d 1158, 1998 WL 193109, at *3 (4th Cir. 1998) (unpublished) (upholding dismissal of a retaliation claim because disagreement with disciplinary practices does not constitute opposition to unlawful employment practices); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference is insufficient.") (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997)); *Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000) (holding that Plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a general displeasure with being paid less than her co-workers given her longer tenure and the fact that she had trained some of them" and not discrimination based on a protected class).